```
               UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF NEW HAMPSHIRE
```

**Thomas L. Attard**

   **v.**                                     Civil No. 06-cv-355-PB
                                                          Opinion No. 2007 DNH 155

**Jean Benoit, et al.**

### MEMORANDUM AND ORDER

Thomas Attard was hired as a tenure-track faculty member in the civil engineering department at the University of New Hampshire ("UNH").  After receiving a notice of non-reappointment, Attard sued UNH and Jean Benoit, chairman of the civil engineering department.  He asserts claims for wrongful termination, breach of contract, misrepresentation, and tortious interference with a contractual relationship.  UNH and Benoit have moved for summary judgment.  For the reasons that follow, I grant the motion in part and deny it in part.

### I.   BACKGROUND[1]

**A.   Letter of Appointment**

Attard accepted a tenure-track position as an Assistant Professor of Civil Engineering at UNH in April 2003.  His letter

---

[1] I construe the facts in the light most favorable to Attard, the non-moving party.  See Latin Am. Music Co. v. Archdiocese of San Juan of the Roman Catholic & Apostolic Church, 499 F.3d 32, 38 (1st Cir. 2007).

of appointment states that his job will begin on August 23, 2003, and that UNH will make a decision on tenure "no later than July 2009." Attach. to Ex. 1, Mot. for Summ. J. (June 27, 2007) (Letter from Jean Benoit to Thomas Attard, at ¶ 1 (May 1, 2003)). The letter also specifies that

> You will also be provided with a start-up fund of $105,000, which you can use to support your research initiation efforts including the purchase of equipment, 2/9th of summer salary, summer graduate support and other related scholarly activities. An additional amount of $15,000 would be made available as matching money for a research grant proposal for external funding for the construction of a Ling machine. The use of the College of Engineering and Physical Sciences machine shop will also be provided at no-cost for the first three years towards the fabrication of the Ling machine. This start-up fund will be provided to you over a period of 2 to 3 years.

Id. The letter does not explicitly identify the length of Attard's employment contract. Nor does it provide any additional details concerning his terms of employment. Instead, it states that Attard's employment will be "governed by the UNH American AAUP Collective Bargaining Agreement." Id. Article 14 of the relevant Collective Bargaining Agreement provides:

> Appointments of non-tenured bargaining unit members expire at the end of each appointment year (academic or fiscal). Notice of non-reappointment shall be given to faculty based on the faculty member's length of service

>    at the end of the appointment year:
>    - One (1) year or less; notice by March 1
>    - Greater than one (1) year but less than two (2); notice by December 15
>    - Equal to or greater than two (2) years; notice twelve (12) months prior to the expiration of the appointment. (For purposes of this Article only, academic year appointments are assumed to expire on May 15th. Fiscal year appointments expire on June 30th.)

Collective Bargaining Agreement, University of New Hampshire, and University of New Hampshire Chapter of the American Association of University Professors, § 141 (July 1, 2003 – June 30, 2006) ("CBA"). The CBA also states

> At the time of initial appointments, a tenure-track faculty member shall be notified in writing that a decision on tenure in his/her case will be reached no later than the end of a certain number of years of full-time service. A tenure decision may be reached before the time so stated, but it shall not be deferred beyond that time. An affirmative tenure decision shall lead to the award of tenure, effective the first day of the following appointment year. A negative tenure decision in the mandatory year shall be followed by a notice of non-reappointment effective at the end of the following appointment year.

2003 CBA at § 13.9.1.

**B.   Employment History**

The relationship between Attard and Benoit became increasingly tense during Attard's employment. Beginning in the fall of 2003, Benoit made inappropriate sexual comments about

-3-

female students in Attard's presence and suggested that one of Attard's foreign Ph.D. students looked like a terrorist. Attard expressed disapproval of Benoit's comments and later reported them to the University's Affirmative Action and Equity Office in October 2005.

Benoit also interfered with Attard's research and teaching. In the fall of 2003, Benoit urged Attard to include two department colleagues, Professors Bell and Cook, in Attard's research proposal for the development of a shaking table facility. The inclusion of Bell and Cook slowed Attard's research significantly. Cook's design for the table was faulty and had to be changed in the summer of 2004. In addition, Bell was on a year-long paid medical leave for the 2004-05 academic year. Because of Bell's absence, Benoit refused Attard's November 2004 and January 2005 requests for access to the start-up funds required to purchase components for the project.

Benoit also asked Attard to teach an extra course in the fall of 2004 because Bell was on medical leave. This added responsibility took away from Attard's research time. In addition, both of the classes that Attard planned to teach in the spring of 2005 were cancelled because he was required to teach

-4-

another of Bell's scheduled classes as well as a class that was regularly taught by Cook. Attard asked Benoit to reconsider the cancellations and submitted a letter and a list of petitioning students, but his request was denied.

In the fall of 2004, Benoit disapproved of Attard's decision to allow a teaching assistant to cover two of Attard's class lectures and criticized Attard for missing too many faculty meetings. In December 2004, Benoit directed Cook to re-administer the student evaluations in one of Attard's classes because the original evaluations were given before Attard announced that there would be an exam during the last week of classes. Attard asked Benoit to reconsider and discussed the situation with an AAUP representative, but the evaluations were re-administered and no action was taken on Attard's letter of protest to Arthur Greenberg, the Dean of the College of Engineering and Physical Sciences.

In February 2005, Benoit met with Attard and suggested that UNH was "not a good fit" for Attard, telling Attard that his research would be better served by a larger university with Ph.D. students. Attard consulted with the AAUP in March 2005 to see if the union could assist with the situation, but the union

representative stated that the union could not help him resolve the case and recommended that Attard contact an attorney.  On May 10, 2005, Attard was notified that Dean Greenberg had accepted the Civil Engineering Department's recommendation of non-reappointment.  Attard was instead given a one-year position that concluded on May 15, 2006.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A party seeking summary judgment must first identify the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The burden then shifts to the nonmoving party to "produce evidence on which a reasonable finder of fact, under the appropriate proof burden, could base a verdict for it; if that party cannot produce such evidence, the motion must be granted."  Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996); see Celotex, 477 U.S. at 323.

### III. ANALYSIS

Attard asserts claims for wrongful termination against UNH[2] (Count I), tortious interference with contractual relations against Benoit (Count II), misrepresentation against UNH and Benoit (Count III), and breach of contract against UNH (Count IV). Defendants seek summary judgment, arguing that: (1) Attard is a contract employee and New Hampshire law only allows at-will employees to sue for wrongful termination; (2) Section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, preempts Attard's claims for tortious interference, misrepresentation, and breach of contract; and (3) the evidence will not support viable claims for tortious interference, misrepresentation, and breach of contract even if the claims are not preempted. I address each argument in turn.

#### A. Wrongful Termination

Attard alleges that he was wrongfully terminated because he refused to condone Benoit's habit of making inappropriate sexual comments about female students. UNH argues that it is entitled

---

[2] I previously granted judgment on the pleadings with respect to Attard's wrongful discharge claim against Benoit. <u>Attard v. Benoit</u>, 2007 DNH 063, May 4, 2007.

to summary judgment on this claim because Attard was a contract employee, and contract employees cannot bring wrongful termination claims. I reject this argument because it is based on the incorrect premise that New Hampshire law does not permit contract employees to sue for wrongful termination.

The New Hampshire Supreme Court confirmed in 2004 that wrongful termination is a cause of action in tort, not contract. <u>Porter v. City of Manchester</u>, 151 N.H. 30, 28 (2004). While the New Hampshire Supreme Court has not yet explicitly held that contract employees are entitled to bring wrongful discharge tort actions, the court's reasoning in <u>Porter</u> leaves little room for the argument that an employee should be deprived of the ability to seek relief for the tort of wrongful termination simply because he also has the benefit of an employment contract. Moreover, defendants have failed to point to any unusual facts in this case that require such a result here. Accordingly, I reject defendants' argument that Attard is barred from suing for wrongful discharge simply because he is a contract employee.

To succeed on his wrongful discharge claim, Attard must establish that he was terminated for performing an act that public policy would encourage or for refusing to do something

that public policy would condemn.  See Lacasse v. Spaulding Youth Ctr., 154 N.H. 246, 248 (2006).  In attempting to meet this requirement, Attard has produced evidence that gives rise to a genuine factual issue as to whether his termination was motivated in part by his refusal to countenance Benoit's "locker room talk" concerning female students.  The New Hampshire Supreme Court has recognized that the question of whether or not a public policy exists is ordinarily a jury question.  Short v.  Sch. Admin. Unit No. 16, 136 N.H. 76, 84 (1992).  This is the case here.  Thus, a jury must also decide whether the public interest in encouraging employees to object to a professor's inappropriate sexual remarks about students is sufficiently strong to serve as the basis for a wrongful termination claim.

## B.     Labor-Management Relations Act Preemption

Defendants argue that Attard's claims for breach of contract, misrepresentation, and tortious interference with a contractual relationship should be dismissed because they are preempted by § 301 of the Labor-Management Relations Act ("LMRA").  Section 301 of the LMRA provides in pertinent part:

>     (a)  Venue, amount, and citizenship
>     Suits for violation of contracts between an employer
>     and a labor organization representing employees in an

> industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

The United States Supreme Court has interpreted § 301 to preempt the application of state law in any case that depends on the interpretation of a collective bargaining agreement. See, e.g., Lingle v. Norge Div. of Magic Chef, 486 U.S. 399, 405-06 (1988). If a dispute only tangentially implicates a collective bargaining agreement, however, the claim is not necessarily preempted by § 301. See, e.g., Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 211 (1985); Fant v. New Eng. Power Serv. Co., 239 F.3d 8, 15 (1st Cir. 2001). For example, the Supreme Court has held that claims involving a purely factual inquiry about the conduct of an employee and the conduct and motivation of an employer are not subject to § 301 preemption because they do not turn on the meaning of any provision in a collective bargaining agreement. See Lingle, 486 U.S. at 407.

### 1. **Breach of Contract Claim**

Attard alleges that UNH breached his contract in two main

ways.  First, Attard alleges that he had a six-year employment contract with UNH that the university breached by prematurely dismissing him before July 2009.  Second, Attard alleges that UNH breached his contract by denying him the use of a promised start-up fund of $105,000.  UNH responds by arguing that both aspects of Attard's breach of contract claim should be dismissed because they are preempted by the LMRA.  For the reasons discussed below, I hold that the LMRA preempts Attard's breach of contract claim for premature dismissal, but does not bar his claim that UNH breached his employment contract by refusing to provide him with the start-up funds referenced in his letter of appointment.

### (a) Breach of Contract – Dismissal

Attard alleges that he understood that his appointment was to be for a minimum of six years because the letter of appointment implied that his employment contract was for a six-year position.  In support of his allegation, Attard cites language in the letter of appointment stating that a tenure decision will be made no later than July 2009, that he will be allowed to use the machine shop at no cost for the first three years of his appointment, and that a start-up fund will be provided over a period of 2 to 3 years.  UNH points out, however,

that the second sentence of the letter of appointment states that the appointment is governed by the CBA.  As quoted above, Article 14 of the 2003 CBA provides that appointments of non-tenured bargaining unit members expire at the end of each appointment year.  CBA § 14.1.  Attard responds by arguing that his employment is governed by Article 13 rather than Article 14 because he is a tenure-track employee.

I cannot resolve Attard's claim that UNH breached his employment contract when it dismissed him without interpreting the CBA.  Accordingly, I hold that this claim is preempted by the LMRA.

### (b)  Breach of Contract – Start-up Funds

Attard also alleges that UNH breached his employment contract by failing to provide him with the start-up funds promised in the letter of appointment.  The CBA is silent on both the issue of start-up funds and the university's duty to provide promised research funds to a faculty member.  Therefore, Attard's claim for breach of contract based on UNH's failure to provide the promised start-up funds does not require interpretation of the CBA and, thus, is not is preempted by the LMRA.  Defendant's motion for summary judgment on Attard's breach of contract claim

is denied to the extent that Attard claims breach of contract based on failure to provide start-up funds.

### 2. Misrepresentation

Attard alleges that UNH and Benoit misrepresented the nature of his employment contract when they caused him to believe that his appointment was for a minimum term of six years. Attard argues that this misrepresentation induced him to accept the employment contract with UNH. In contrast, UNH and Benoit argue that they made no misrepresentation and contend that they are entitled to summary judgment on Attard's misrepresentation claim because it is preempted by § 301 of the LMRA.

The elements of fraudulent misrepresentation[3] in New Hampshire require Attard to prove that: (1) the defendant misrepresented a material fact to the plaintiff, (2) with knowledge of its falsity, (3) with the fraudulent intent that

---

[3] Attard pleads a claim for "misrepresentation" and discusses his claim as "misrepresentation in the inducement" in his memorandum in opposition to defendant's motion for summary judgment. It is somewhat unclear whether Attard is seeking relief for fraudulent misrepresentation or negligent misrepresentation, but his claim is most appropriately characterized as a fraud claim because his complaint does not explicitly allege negligence by asserting that UNH and Benoit had a specific duty that was breached.

plaintiff would rely upon it, and that (4) plaintiff justifiably relied on the misrepresentation without knowledge of its falsity. Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 30 n.5 (1st Cir. 2004); Snierson v. Scruton, 145 N.H. 73, 77 (2000).

Attard does not base his misrepresentation claim on the 2003 CBA.  Accordingly, Attard's misrepresentation claim is not preempted by § 301 of the LMRA.  See Lingle, 486 U.S. at 407.

### 3. **Tortious Interference with Contract**

Attard alleges that Benoit tortiously interfered with his contractual relationship with UNH by setting up conditions that were contrary to the employment contract.  Benoit denies the allegations and argues that Attard's claim is preempted by § 301 of the LMRA.

In New Hampshire, a claim for intentional interference with contractual relations is established when plaintiff shows:  (1) plaintiff had an economic relationship with a third party; (2) the defendant knew of this relationship, (3) the defendant intentionally and improperly interfered with this relationship, and 4) the plaintiff was damaged by such interference.  Hughes v. N.H. Div. of Aeronautics, 152 N.H. 30, 40-41 (2005).  Attard

claims that Benoit interfered with his contractual relationship with UNH by preventing Attard from drawing on the start-up funds authorized by his contract, lying to the Promotion and Tenure Committee, and undermining the student evaluation process.[4]

Attard's claim does not require interpretation of the CBA because the claims he raises merely involve questions of employee and employer conduct. There is nothing in the CBA that governs how student evaluations or start-up funds are to be handled, other than § 13.1.4, which provides that "[m]embers of the bargaining unit will be expected to participate in required student evaluations of teaching."  CBA § 13.1.4.  Similarly, Attard's claim that Benoit lied to the Promotions and Tenure Committee involves only an inquiry into the conduct of the parties, not an interpretation of the CBA.  Thus, this claim is not preempted by § 301 of the LMRA.

---

[4] In his complaint, Attard also claims that Benoit tortiously interfered with his contractual relationship with UNH by "failing to follow the employment contract and the CBA by undertaking to recommend summary dismissal of Attard."  Compl. ¶ 65.  Failure to follow a contract and CBA gives rise to a breach of contract claim, not a tortious interference claim.  Because Attard cannot recover for tortious interference based on this claim, I do not address it here.

## C.   **Evidentiary Deficiencies**

Although Attard's claims for tortious interference with a contractual relationship and misrepresentation are not preempted by the LMRA, they nevertheless fail because Attard has not submitted enough evidence to demonstrate that he can succeed on either claim.

### 1.   **Tortious interference with contractual relationship**

Attard's tortious interference claim against Benoit fails because the undisputed evidence demonstrates that Benoit was acting in the scope of his employment when he engaged in the conduct that Attard claims interfered with his contractual relationship with UNH.  While the New Hampshire Supreme Court has not yet addressed the issue of whether a co-employee can be liable for tortious interference with a contract between a co-employee and the employer, the majority of courts that have addressed this issue have held that a co-employee cannot be a third party for the purpose of interfering with the plaintiff's contractual relationships, if that co-employee is acting within the scope of his employment.  See, e.g., Albert v. Loksen, 239 F.3d 256, 274-75 (2d Cir. 2001); Fioriglio v. City of Atlantic City, 996 F. Supp. 379, 392-93 (D.N.J. 1998), aff'd 185 F.3d 861

-16-

(3d Cir. 1999); Alexander v. Fujitsu Bus. Commc'n Sys., 818 F. Supp. 462, 469 (D.N.H. 1993); Nordling v. N. States Power Co., 478 N.W.2d 498, 507 (Minn. 1991).

This general rule is premised on basic principles of agency. For example, in New Jersey, courts support this general rule by recognizing that employees acting within the scope of their employment are generally immune from tort liability. Fioriglio, 996 F. Supp. at 392-93. Similarly, in New York, courts recognize that an agent cannot be held liable for inducing a principal to breach a contract with a third party when he is acting within the scope of his authority on behalf of the principal. Kartiganer Assoc., P.C. v. Town of New Windsor, 485 N.Y.S.2d 782 (N.Y. App. 1985).

In this case, the undisputed evidence demonstrates that Benoit was acting within the scope of his employment when he engaged in the relevant conduct. It was in his capacity as chairman of the civil engineering department that Benoit controlled Attard's access to the start-up funds, administered the student evaluations, and participated in the decision making process that led to Attard's non-reappointment. Benoit acted as an agent of the university, and therefore he cannot be considered

a "third party" with respect to this claim.[5]

## 2. **Misrepresentation**

The evidence submitted by Attard does not support an actionable claim for fraudulent misrepresentation. Significantly, Attard fails to allege that either UNH or Benoit ever actually represented that they were hiring Attard for a minimum of six years.  At most, Attard suggests that there was an implied misrepresentation, citing as evidence both an April 2003 e-mail from Benoit to Attard stating that UNH was "interested in having someone commit to this place for the long term" and references in Attard's letter of appointment to future events such as the provision of start-up funds and a tenure decision.  This is not sufficient to permit a reasonable jury to conclude that either Benoit or UNH made any actionable misrepresentations.  In addition, Attard has not submitted sufficient evidence to permit a reasonable jury to conclude that he reasonably relied on any misrepresentations that were made.  See Snierson, 145 N.H. at 77. Essentially, Attard seeks to impose liability on UNH and Benoit

---

[5] Attard's allegations that Benoit acted in bad faith by retaliating against Attard for his disapproval of Benoit's alleged lewd and sexist remarks are appropriately addressed in the context of Attard's wrongful termination claim.

for his own misunderstanding of his employment contract.  Because Attard has failed to allege enough evidence to permit a reasonable jury to conclude that defendants committed the tort of fraudulent misrepresentation, his claim fails as a matter of law.

### IV.  CONCLUSION

In summary, defendants' motion for summary judgment (Doc. No. 19) granted in part and denied in part.  The motion is denied with respect to Attard's wrongful termination claim and breach of contract claim for failure to provide promised start-up funds.  Defendants' motion is granted with respect to Attard's breach of contract claim for premature dismissal because that claim is preempted by the LMRA, and granted with respect to Attard's misrepresentation and tortious interference claims because Attard failed to proffer sufficient evidence to support those claims.

SO ORDERED.

/s/Paul Barbadoro  
Paul Barbadoro  
United States District Judge

December 12, 2007

cc:  Paul McEachern, Esq.  
     Martha Van Oot, Esq.